SARAH E. ORMANDROYD *vs.* FITCHBURG AND LEOMINSTER STREET RAILWAY COMPANY.

Worcester.     October 2, 1906. — October 17, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence.   Street Railway.   Carrier,* Of passengers.

A street railway company is not liable for an injury to a passenger incurred while travelling in one of its open cars on the Fourth of July from being struck by the wadding of a cannon fired with a blank cartridge by a patriotic citizen in celebration of the day in the door yard of his house adjoining the street on which the car was passing, although the citizen had been firing the cannon practically all day as often as it could be loaded and several hundred cars of the defendant had passed while he was doing so, and the superintendent who had charge and control of the operation of the railway on that day had noticed for many years that in the city where the accident occurred there was a great deal of discharging of firearms on every Fourth of July.

The duty of a street railway company to protect its passengers from injury does not extend to exercising on the Fourth of July a supervision of the details of the firing of cannon and other demonstrations of patriotic emotion by citizens along the line of a highway through which its cars pass, and it is not the duty of its servants when a car is about to pass a door yard where a cannon is being fired in such a demonstration to stop the car and make an investigation to determine whether the cannon is loaded and pointed properly.

TORT, with a count in contract, against a street railway company for personal injuries received by the plaintiff while she was a passenger on an open car of the defendant on July 4, 1905, from being struck by the wadding of a cannon discharged by one Ouellet in his door yard upon River Street in Fitchburg. Writ dated September 18, 1905.

In the Superior Court the case was tried before *Pierce,* J. The use of the cannon by Ouellet during the day is described in the opinion.

The cannon was eighteen inches long mounted on a wooden block six inches high, and its discharge made a loud noise which could be heard two hundred feet away and sent out a jet of flame and a volume of smoke as far as the sidewalk, which could be seen from the defendant's tracks in either direction, and the cannon itself could be seen at a point directly opposite it from either of the tracks.   The plaintiff was a passenger on an open car of the defendant proceeding on the east bound track, which was the track farthest from the yard and the cannon, and was struck and injured by the wadding from the cannon, which was discharged at or about the time she was struck.   She was in the exercise of due care.   The superintendent of the defendant had lived in the city of Fitchburg for twenty years before the accident and had charge and control of the operations of the defendant at the time of the accident.   He knew and had noticed for a number of years that on the fourth day of July of each year in that city there is a great deal of discharging of firearms.   The car was not stopped on approaching the place when the cannon was being discharged and no precautions were taken by the defendant to guard the passengers against the consequences of such discharges.

At the close of the evidence for the plaintiff the judge ruled that the plaintiff could not maintain her action, and ordered a verdict for the defendant.   The plaintiff alleged exceptions.

*C. H. Blood,* for the plaintiff.

*C. F. Baker & W. P. Hall,* for the defendant.

HAMMOND, J.   The evidence did not warrant a finding of negligence on the part of the defendant.   The accident happened about half past five in the afternoon of July 4, 1905. With the exception of one or two rests, each lasting less than

an hour, one Ouellet, who seems to have devoted the day to a
patriotic celebration, had been discharging the cannon "prac-
tically all day since four o'clock in the morning until the time
of the accident, as often as it could be loaded, which took from
five to fifteen minutes." Ever since half past five in the morn-
ing the cars of the defendant had been passing by this locality,
so that up to the time of the accident several hundred cars had
passed. It was a day for fireworks of every description. The
cannon was loaded with blank cartridges, and was in Ouellet's
yard, quite a distance from the street, sending out "a jet of
flame and a volume of smoke as far as the sidewalk," several
feet short of the defendant's car tracks. The defendant had no
reason to anticipate any danger to its passengers from such a
source. Nor was it bound to stop its car and investigate for the
purpose of seeing whether the cannon was properly loaded or
pointed. The firing had been going on all day and, in the ab-
sence of any indication to the contrary, the defendant had the
right to assume that it was not a hostile demonstration against
the travellers upon the highway, but was a simple ebullition of
patriotic emotion, and as such was harmless. To require a
street railway corporation to have a general oversight of the
details of such exhibitions along the line of the highway on the
anniversary of the Declaration of Independence, and to hold it
responsible for the consequences to its passengers of any neg-
lect of the exhibitors would be unreasonable. Such care would
be inconsistent with the proper transaction of the business. It
might keep the passengers safe, but the cars would practically
be at a standstill most of the time and their proper efficiency
would be greatly impaired. The case widely differs from those
cases where the railway corporation has reason to anticipate
danger from a crowd of rioters or from other causes.

*Exceptions overruled.*